IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

CELLSPIN SOFT, INC.,

Plaintiff,

v.

SZ DJI TECHNOLOGY CO., LTD.,
DJI EUROPE B.V.,

Defendants.

Case No. 2:25-cv-949

**ORIGINAL COMPLAINT FOR
INFRINGEMENT OF U.S.
PATENT NOS. 9,900,766;
10,425,806; 11,234,121;**

**DEMAND FOR JURY TRIAL**



Source: https://www.dji.com/



Source: https://apps.apple.com/us/app/dji-fly/id1479649251



Source: https://apps.apple.com/us/app/dji-mimo/id1431720653

**ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT**

## COMPLAINT FOR PATENT INFRINGEMENT

1. Plaintiff Cellspin Soft, Inc. ("Cellspin" or "Plaintiff"), by and through its undersigned counsel, files this Complaint against Defendants SZ DJI Technology Co., Ltd., and DJI Europe B.V. (collectively, "DJI" or "Defendants") for infringement of United States Patent Nos. 9,900,766 ("the '766 Patent"), 10,425,806 ("the '806 Patent"), and 11,234,121 ("the '121 Patent") (collectively, the "Patents-in-Suit"), and alleges as follows:

## NATURE OF THE ACTION

2. This is a civil action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 1 et seq., including 35 U.S.C. §§ 271, 281, 283, and 284, to obtain damages and injunctive relief resulting from Defendants' unauthorized actions of making, having made, using, selling, offering to sell, and/or importing into the United States products that infringe or enable the infringement of one or more claims of the Patents-in-Suit. The Patents-in-Suit cover methods and systems for automatic multimedia upload and data transfer from Bluetooth- or Wi-Fi-enabled data capture devices (e.g., cameras, drones) to web services via mobile devices with minimal user intervention.

## THE PARTIES

3. Plaintiff, Cellspin Soft, Inc. ("Cellspin"), is a corporation with an office and place business at 2784 Homestead Rd PMB 116, Santa Clara, CA 95051.

**ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT**

4.  Defendant SZ DJI Technology Co., Ltd. ("DJI Technology") is, upon information and belief, a corporation organized and existing under the laws of China, with a principal place of business at Level 6, Building No. 2, No. 8, Laoshan Road, Shenzhen, Guangdong, China. DJI Technology designs, manufactures, and distributes the accused products globally, including in the United States and this Judicial District. Defendant DJI is headquartered in Shenzhen, China at DJI Sky City, No. 55, Xianyuan Road HQ and has offices at 14th Floor, West Wing, Skyworth Semiconductor Design Building, No.18 Gaoxin South 4th Ave, Nanshan District, Shenzhen, China, 518057. DJI imports and sells the accused products directly into the United States and also through its corporate-owned offices and wholly owned subsidiaries in the United States that it directs and controls. DJI products can be purchased at numerous retailers throughout the United States, including in the Eastern District of Texas. Defendant makes, uses, offers to sell, sells, supplies and services the accused products throughout the United States, including in this district.

5.  Defendant DJI Europe B.V. is, upon information and belief, a corporation organized and existing under the laws of the Netherlands, with a principal place of business at Strawinskylaan 3105, 1077 ZX Amsterdam, Netherlands. DJI Europe B.V. handles global distribution of DJI products, including supplying the accused products to the United States through DJI Technology Inc.

6.  DJI Technology directs and controls the operations of DJI Technology Inc.

**ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT**

and DJI Europe B.V., or alternatively, these entities form a joint business enterprise, making each other's performance attributable to the others. DJI Technology Inc. markets and sells the accused products through its website (www.dji.com) (www.dji.com) and authorized retailers (e.g., Best Buy, Amazon) in the United States, including this Judicial District. DJI Europe B.V. facilitates the global distribution of the accused products, including their importation into the United States.

7.  DJI designs, manufactures, makes, uses, markets, offers to sell, sells, and/or imports cameras and drones configured to capture multimedia data (e.g., photos, videos) and automatically transfer it via Bluetooth or Wi-Fi to mobile devices and web services, including the products accused of infringement in this Complaint, in the United States, including this Judicial District. DJI Technology Inc. employs approximately 6–10 drone pilots in Texas (Houston and San Antonio) for field-based operations, requiring FAA Part 107 licenses and 1–5 years of survey experience, to support sales, demonstrations, and testing of DJI products in this District.

8. Upon information and belief, DJI's Chinese roots have triggered US regulatory actions, including its 2020 addition to the *US Department of Commerce's Entity List* for alleged Xinjiang surveillance involvement, restricting US technology exports. In 2021, the US Treasury listed DJI as a Non-SDN Chinese Military Industrial Complex Company, and *in 2022, the Department of Defense labeled it a*

**ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT**

*"Chinese Military Company."* The Countering CCP Drones Act (2024) threatens a potential US ban by late 2025 if DJI fails a national security review. DJI denies military ties, claiming private status and independent audits showing no security risks, and has spent approximately $7 million lobbying US lawmakers since 2019. These restrictions, including import bans under the Uyghur Forced Labor Prevention Act, have reduced US operations but not halted consumer sales.

<u>**JURISDICTION AND VENUE**</u>

9. Plaintiff incorporates by reference the allegations contained in paragraphs above.

10. This action arises under the patent laws of the United States, 35 U.S.C. § 1 et seq. including 35 U.S.C. §§ 271, 281, 283, and 284. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

11. This Court has personal jurisdiction over Defendant DJI because it has supplied its products into this district and under the Federal Long Arm Rule, FRCP 4(k)(2).

12. This Court has personal jurisdiction and venue under 28 U.S.C. § 1391(c)(3) over DJI because: (i) DJI Technology and DJI Europe B.V., as foreign entities, are subject to jurisdiction in any judicial district, and conduct substantial business in the United States and this District through the manufacture, distribution, and sale of the accused products via www.dji.com and retailers like Best Buy and Amazon in Plano, TX (Collin County, Sherman Division). (ii) DJI Technology has

**ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT**

purposefully availed itself of the privileges of conducting business in Texas and this District by marketing and selling the accused products through its website (www.dji.com) and authorized retailers (e.g., Best Buy in Plano, TX), and by employing field-based drone pilots in Houston and San Antonio for product demonstrations and sales support. (iii) DJI maintains continuous and systematic contacts in Texas and this District, including through sales via retailers like B&H Photo, Amazon, and Best Buy, which operate in this District and derive substantial revenue from DJI product sales, and through field-based operations involving 6–10 drone pilots in Texas, distinct from Anzu Robotics, a separate Texas-based company licensing DJI technology. (iv) DJI places the accused products in the stream of commerce, knowing they are likely to be sold and used in Texas and this District, as evidenced by DJI's marketing materials targeting U.S. and Texas consumers. (v) DJI has previously defended patent infringement suits in Texas, including **Case 2:24-cv-00903-JRG** *Urban Aeronautics Limited v. SZ DJI Technology Co., Ltd,* and *Textron Innovations Inc. v. SZ DJI Technology Co., Ltd.,* No. 6:21-cv-00907 (W.D. Tex., filed 2021, settled 2024), demonstrating its submission to Texas jurisdiction without successful transfer.

13. Venue is proper in this Judicial District under 28 U.S.C. § 1391(c)(3), and § 1400(b) because (i) DJI has committed acts of infringement in this District through sales and offers to sell the accused products via www.dji.com and authorized retailers, such as Best Buy and Amazon, which target consumers in Marshall, Tyler,

**ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT**

and other counties in the Eastern District of Texas.  (ii) DJI Technology has a regular and established place of business in this District through its field-based operations in Texas, including approximately 6–10 drone pilot positions in Houston and San Antonio, which support sales, demonstrations, and testing of accused products under DJI's direction, distinct from Anzu Robotics' operations in College Station, TX.  (iii) DJI Technology and DJI Europe B.V., as foreign entities, may be sued in any judicial district, including this District, under 28 U.S.C. § 1391(c)(3), and their products are sold in this District through DJI Technology distribution network, including Best Buy and Amazon.  (iv) The presence of DJI Technology's field operations and significant retail sales in EDTX strengthens venue under *In re Cray Inc.*, 871 F.3d 1355 (Fed. Cir. 2017).

14. This Court is a proper venue for a case against Defendant DJI, a foreign corporation, in any judicial district in any state to which it is subject to personal jurisdiction. *Brunette Mach. Works, Ltd. v. Kockum Indus., Inc*., 406 U.S. 706, 92 S. Ct. 1936, 32 L. Ed. 2d 428 (1972); *see also TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 581 U.S. 258, 137 S. Ct. 1514, 197 L. Ed. 2d 816 (2017) (Declining to expand limitation of venue statutes related to domestic corporations to foreign corporations).

## **PATENTS-IN-SUIT**

15. Plaintiff incorporates by reference the allegations contained in the paragraphs above.

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

16. "Patents are presumed valid, and each patent claim is 'presumed valid independently of the validity of other claims.'" *Kowa Co., Ltd. v. Amneal Pharms*., LLC, No. 14-CV-2758 (PAC), 2017 WL 10667089, at *6 (S.D.N.Y. Sept. 19, 2017) (*citing* 35 U.S.C. § 282) *aff'd*, 745 F. Appx 168 (Fed. Cir. 2018).

17. "Patent examiners are owed deference and are 'presumed to have considered' prior art references listed on the face of a patent." *Id.* (*citing Shire, LLC v. Amneal Pharm., LLC*, 802 F.3d 1301, 1307 (Fed. Cir. 2015)). Defendants "have the added burden of overcoming the deference that is due to a qualified government agency presumed to have properly done its job, which includes one or more examiners who are assumed to have some expertise in interpreting the references and to be familiar from their work with the level of skill in the art and whose duty it is to issue only valid patents." *Id.* (*quoting PowerOasis, Inc. v. T-Mobile USA*, Inc., 522 F.3d 1299, 1304 (Fed. Cir. 2008)).

18. By operation of law, the Patents-in-Suit originally issued and exclusively vested to Cellspin Soft, Inc. as of the issue date of the Patents-in-Suit.  *See* 35 U.S.C. § 261; *Schwendimann v. Arkwright Advanced Coating, Inc*., 959 F.3d 1065, 1072 (Fed. Cir. 2020); *Suppes v. Katti*, 710 Fed. Appx. 883, 887 (Fed. Cir. 2017); *Taylor v. Taylor Made Plastics, Inc*., 565 Fed. Appx. 888, 889 (Fed. Cir. 2014).

19. United States Patent No. 9,900,766, entitled "Automatic Multimedia Upload for Publishing Data and Multimedia Content," was duly and legally issued by the United States Patent and Trademark Office (USPTO) on February 20, 2018, after a

**ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT**

full and thorough examination. A true and correct copy is attached as **Exhibit A**.

20. United States Patent No. 10,425,806, entitled "Automatic Multimedia Upload for Publishing Data and Multimedia Content," was duly and legally issued by the USPTO on September 24, 2019, after a full and thorough examination. A true and correct copy is attached as **Exhibit B**.

21. United States Patent No. 11,234,121, entitled "Automatic Multimedia Upload for Publishing Data and Multimedia Content," was duly and legally issued by the USPTO on January 25, 2022, after a full and thorough examination. A true and correct copy is attached as **Exhibit C**.

22. Plaintiff is the assignee of all right, title, and interest in and to the Patents-in-Suit and possesses all rights of recovery, including the right to recover damages for past, present, and future infringement and to obtain injunctive relief.

23. The Patents-in-Suit are presumed valid under 35 U.S.C. § 282, and each patent claim is presumed valid independently of the validity of other claims.

24. The Patents-in-Suit cover innovative methods and systems for automatically transferring data, such as Photos, Videos or Text, fitness, from a Bluetooth or Wi Fi (short range wireless) - enabled data capture device (e.g., a camera) to a mobile device (e.g., a smartphone) via a secure paired Bluetooth or short range connection, and subsequently to a web service (e.g., a cloud server) using HTTP, with minimal user intervention. Some of the key features include Bluetooth or short range pairing, signal notifications, event notifications, polling, cryptographic authentication, and

**ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT**

automatic data upload to web services.

25. A variety of well-known companies and a multitude of USPTO examiners have cited the Patents-in-Suit in the prosecution of these companies' patent applications including, Samsung, Nokia, Citrix Systems, Amazon Technologies, Microsoft, and Google.[1] This shows the importance of the technology to leading technology providers.

26. The USPTO Examiners did thorough search for prior art looking into at least these twelve (12) recorded classifications:

    a. "H04N1/00307 Connection or combination of a still picture apparatus with another apparatus, *e.g.* for storage, processing or transmission of still picture signals or of information associated with a still picture with a telecommunication apparatus, *e.g.* a switched network of teleprinters for the distribution of text-based information, a selective call terminal with a mobile telephone apparatus;"

    b. "G06F3/005 Input arrangements through a video camera;"

    c. "H04L67/04 Protocols specially adapted for terminals or networks with limited capabilities; specially adapted for terminal portability;"

    d. "H04N1/00103 Systems or arrangements for the transmission of the picture signal specially adapted for radio transmission, *e.g.* via satellites;"

---

[1] *See https://patents.google.com/patent/US9749847B2* as last visited on June 6, 2025.

**ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT**

e.  "H04N1/00103 - Systems or arrangements for the transmission of the picture signal specially adapted for radio transmission, *e.g.* via satellites;"

f.  "H04N1/00 - Scanning, transmission or reproduction of documents or the like, e.g. facsimile transmission; Details thereof;"

g.  "H04N1/00095 - Systems or arrangements for the transmission of the picture signal;"

h.  "H04N1/00106 - Systems or arrangements for the transmission of the picture signal specially adapted for radio transmission, *e.g.* via satellites using land mobile radio networks, e.g. mobile telephone;"

i.  "H04N1/00108 - Systems or arrangements for the transmission of the picture signal specially adapted for radio transmission, *e.g.* via satellites of digital signals;"

j.  "H04N1/00127 Connection or combination of a still picture apparatus with another apparatus, e.g. for storage, processing or transmission of still picture signals or of information associated with a still picture;"

k.  "H04N1/00204 Connection or combination of a still picture apparatus with another apparatus, *e.g.* for storage, processing or transmission of still picture signals or of information associated with a still picture with a digital computer or a digital computer system, *e.g.* an internet server;"

**ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT**

l.  "H04N21/4223 Cameras;"

m.  "H04N21/6131 Network physical structure; Signal processing specially adapted to the downstream path of the transmission network involving transmission via a mobile phone network;"

n.  "H04W4/02 Services making use of location information;"

o.  "H04W4/023 Services making use of location information using mutual or relative location information between multiple location based services [LBS] targets or of distance thresholds;"

p.  "H04W4/21 Services signaling; Auxiliary data signaling, *i.e.* transmitting data via a non-traffic channel for social networking applications;"

q.  "H04W4/80 Services using short range communication, *e.g.* near-field communication [NFC], radio-frequency identification [RFID] or low energy communication;" and

r.  "H04N2201/0084 Digital still cameras."

## DJI ACCUSED INSTRUMENTALITIES

27. DJI infringes, and/or induces others to infringe, the asserted patent claims with its "Accused Instrumentalities," which include the following 11 camera and drone products and two mobile apps: Osmo Action (released May 2019), Osmo Pocket 2 (released October 2020), Osmo Action 3 (released September 2022), Osmo Pocket 3 (released October 2023), Osmo Action 4 (released August 2023),

**ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT**

Mini 4 Pro (released September 2023), Air 3 (released July 2023), Mavic 3 Pro (released April 2023), Osmo Action 5 Pro (released September 2024), Air 3S (released October 2024), Mavic 4 Pro (released May 2025). These are Bluetooth- and Wi-Fi-enabled camera devices designed to capture multimedia data (e.g., photos, videos) and automatically transfer it via a secure connection to a mobile device running the DJI Mimo app (available at https://apps.apple.com/us/app/dji-mimo/id1436030986) or DJI Fly app (available at https://apps.apple.com/us/app/dji-fly/id1472682137) for iOS and Android, which then uploads the data to web services (e.g., SkyPixel or third-party platforms like Google Drive) using HTTP/HTTPS.

28. The DJI Mimo app is a comprehensive application designed for DJI handheld devices, including the Osmo Action and Osmo Pocket series. It provides live HD video feeds, real-time preview, and remote control, enabling users to adjust camera settings (e.g., exposure, shutter speed) and fine-tune composition. The app supports intelligent modes such as ActiveTrack for subject tracking, My Story video templates for quick editing, and advanced editing functions (e.g., trim, split, speed adjustment, filters, watermark stickers). It facilitates seamless wireless connectivity via Bluetooth (4.2 or 5.0) and Wi-Fi (802.11b/g/n or 802.11ac), allowing automatic transfer of photos and videos to smartphones and cloud services with minimal user intervention. Users can activate devices, receive push notifications for new content availability, and export files directly to platforms like SkyPixel or Google Drive

**ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT**

without manual downloads, streamlining post-production. The app requires permissions like IGNORE_BATTERY_OPTIMIZATION to run in the background, ensuring continuous recording and data transfer.

29. The DJI Fly app is tailored for DJI drones, including the Mini, Air, and Mavic series, offering an intuitive flight interface, quick-transfer functionality for wireless content transfer to smartphones, and intelligent modes like ActiveTrack 360°, Dolly Zoom, and QuickShots. It supports 4K video recording, real-time flight data (e.g., altitude, battery status), and seamless integration with cloud services for uploading photos and videos. The app uses Bluetooth (4.2 or 5.0) and Wi-Fi (O3+ or O4 transmission) for device connectivity, enabling automatic data transfer with user authentication and minimal interaction post-setup. Recent updates (e.g., v1.13.6 as of November 2024) added features like Dolly Zoom for DJI Flip, enhancing creative control. The app requires permissions for background operation to ensure uninterrupted data syncing to web services.

30. The Accused Instrumentalities feature the following technical specifications, which enable the infringing functionality of automatic multimedia transfer via Bluetooth and Wi-Fi to the DJI Mimo or DJI Fly app for upload to web services:

31. Osmo Action: Action camera with 4K/60fps video, 12MP, 1/2.3" CMOS sensor, RockSteady stabilization, dual screens (1.4-inch front, 2.25-inch rear), 145° FOV, 8x slow motion, Wi-Fi (802.11b/g/n), Bluetooth 4.2, and DJI Mimo app compatibility. Supports automatic transfer of images and videos to smartphones via

**ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT**

Bluetooth/Wi-Fi, with a battery life of up to 135 minutes at 1080p/30fps.

32. Osmo Pocket 2: Handheld gimbal camera with 4K/60fps video, 64MP, 1/1.7" CMOS sensor, 8x zoom, DJI Matrix Stereo audio, 93° FOV, ActiveTrack 3.0, Wi-Fi (802.11b/g/n), Bluetooth 4.2, and DJI Mimo app support. Enables automatic multimedia transfer to mobile devices for cloud upload with minimal user intervention.

33. Osmo Action 3: Action camera with 4K/120fps video, 12MP, 1/1.7" CMOS sensor, Super-Wide 155° FOV, HorizonSteady stabilization, 16m waterproof, dual touchscreens (1.4-inch front, 2.25-inch rear), Wi-Fi (802.11ac), Bluetooth 4.2, and DJI Mimo app integration. Supports seamless image and video transfer to smartphones via Bluetooth/Wi-Fi.

34. Osmo Pocket 3: Handheld gimbal camera with 4K/120fps video, 64MP, 1" CMOS sensor, 2" OLED touchscreen, 10-bit D-Log M and HLG color modes, ActiveTrack 6.0, 130° FOV, Wi-Fi (802.11ac), Bluetooth 5.0, and DJI Mimo app compatibility. Enables automatic upload of multimedia to cloud services with advanced subject tracking.

35. Osmo Action 4: Action camera with 4K/120fps video, 10MP, 1/1.3" CMOS sensor, 10-bit D-Log M color mode, 155° FOV, RockSteady 3.0 stabilization, 18m waterproof, dual touchscreens (1.4-inch front, 2.25-inch rear), Wi-Fi (802.11ac), Bluetooth 5.0, and DJI Mimo app support. Facilitates automatic multimedia transfer to smartphones and web services.

**ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT**

36. Mini 4 Pro: Drone with 4K/100fps video, 48MP, 1/1.3" CMOS sensor, 82.1° FOV, ActiveTrack 360°, omnidirectional obstacle sensing, O4 Wi-Fi transmission, Bluetooth 5.0, and DJI Fly app compatibility. Supports automatic transfer of images and videos to smartphones for cloud upload, with a flight time of up to 34 minutes.

37. Air 3: Drone with 4K/60fps HDR video, 48MP, dual 1/1.3" CMOS sensors (wide + tele), 14 stops dynamic range, O4 Wi-Fi transmission, Bluetooth 5.0, 46-minute flight time, and DJI Fly app support. Enables automatic multimedia uploads to web services with advanced imaging capabilities.

38. Mavic 3 Pro: Drone with 5.1K/50fps video, 20MP (wide), 48MP (medium tele), 12MP (tele), 4/3" CMOS Hasselblad sensor, 15km O3+ Wi-Fi transmission, Bluetooth 5.0, and DJI Fly app integration. Supports high-speed image and video transfer to mobile devices, with a flight time of up to 43 minutes.

39. Osmo Action 5 Pro: Action camera with 4K/120fps video, 40MP, 1/1.3" CMOS sensor, 13.5-stop dynamic range, 47GB internal storage, 20m waterproof, HLG support, dual OLED touchscreens (1.4-inch front, 2.25-inch rear), Wi-Fi (802.11ac), Bluetooth 5.0, and DJI Mimo app compatibility. Enables automatic upload to cloud services with subject tracking and advanced color grading.

40. Air 3S: Drone with 4K/60fps HDR video, 50MP, 1" CMOS sensor (wide), 70mm tele, 14 stops dynamic range, O4 Wi-Fi transmission, Bluetooth 5.0, nightscape sensing, and DJI Fly app support. Facilitates automatic multimedia transfer to smartphones and web services, with a flight time of up to 45 minutes.

**ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT**

41. Mavic 4 Pro: Drone with 4K/120fps video, 100MP, 4/3" Hasselblad CMOS sensor, 360° gimbal, 51-minute flight time, O4 Wi-Fi transmission, Bluetooth 5.0, omnidirectional obstacle avoidance, and DJI Fly app compatibility. Supports seamless multimedia uploads to cloud services with advanced stabilization and imaging.

42. The accused instrumentalities include, but are not limited to, the DJI hardware products and associated DJI Fly and DJI Mimo applications, which enable automatic uploading of multimedia content to DJI's SkyPixel platform, as promoted on www.dji.com and in app store descriptions, directly infringing Cellspin's patents by performing the patented methods of capturing, editing, and uploading multimedia with minimal user intervention.

43. The exemplary infringement charts, attached as Exhibits D through I, detail infringement all claims of the Patents-in-Suit. Specifically: **Exhibit D**: Osmo Action 4 ('766 Patent), which is exemplary of Osmo Action, Osmo Pocket 2, Osmo Action 3, Osmo Pocket 3, Osmo Action 5 Pro, and similar products, **Exhibit E**: Osmo Action 4 ('806 Patent), which is exemplary of Osmo Action, Osmo Pocket 2, Osmo Action 3, Osmo Pocket 3, Osmo Action 5 Pro, and similar products, **Exhibit F**: Osmo Action 4 ('121 Patent), which is exemplary of Osmo Action, Osmo Pocket 2, Osmo Action 3, Osmo Pocket 3, Osmo Action 5 Pro, and similar products, **Exhibit G**: Mini 4 Pro ('766 Patent), which is exemplary of Air 3, Air 3S, Mavic 3 Pro, Mavic 4 Pro and similar products, **Exhibit H**: Mini 4 Pro ('806

**ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT**

Patent), which is exemplary of Air 3, Air 3S, Mavic 3 Pro, Mavic 4 Pro and similar products, **Exhibit I**: Mini 4 Pro ('121 Patent), which is exemplary of Air 3, Air 3S, Mavic 3 Pro, Mavic 4 Pro and similar products. These charts demonstrate that the Osmo Pocket 3 and Mini 4 Pro, in conjunction with their respective apps, implement substantially identical Bluetooth/Wi-Fi data transfer functionality, meeting all claim limitations of the Patents-in-Suit. The analysis is representative of all Accused Instrumentalities, as each employs the same app-enabled Bluetooth/Wi-Fi transfer technology, with variations only in sensor resolution, processor type, or flight capabilities, which do not affect the infringing functionality.

## COUNT I – INFRINGEMENT OF U.S. PATENT NO. 9,900,766

44. Plaintiff refers to and incorporates herein the allegations in the above paragraphs.

45. United States Patent No. 9,900,766 (the "'766 Patent") was duly and legally issued by the USPTO after a full and examination presumed to be thorough.

46. DJI has directly infringed, and continues to directly infringe, the '766 Patent pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, by making, using, selling, offering to sell, and/or importing the Accused Instrumentalities, which practice the methods claimed in the '766 Patent, including all claims, within the United States and this District. For example, DJI practices the claimed methods by testing, demonstrating, and using the Accused Instrumentalities, which acquire multimedia data, automatically transfer it via

**ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT**

Bluetooth/Wi-Fi to a paired mobile device running the DJI Mimo or DJI Fly app, and upload it to a web service with a user identifier. See **Exhibit D** and **Exhibit G** for details.

47. DJI has indirectly infringed, and continues to indirectly infringe, the '766 Patent pursuant to 35 U.S.C. § 271(b) by actively inducing direct infringement by others, including customers and end-users, in this District and elsewhere in the United States, through product sales, the DJI Mimo and DJI Fly apps, and instructions (e.g., user manuals, setup guides at https://www.dji.com/support). Defendants induce infringement under 35 U.S.C. § 271(b) by providing instructions and promotional materials in the DJI Fly and DJI Mimo apps, available through store.dji.com and app stores accessible in EDTX, which encourage users to automatically upload multimedia to SkyPixel, as evidenced by promotional content on www.dji.com and app store descriptions, thereby infringing Cellspin's patents.DJI contributes to infringement of the '766 Patent pursuant to 35 U.S.C. § 271(c) by selling and offering to sell the Accused Instrumentalities and the DJI Mimo and DJI Fly apps, which are material components of the claimed methods, knowing they are especially adapted for infringing use and not suitable for substantial non-infringing use. DJI's direct and indirect infringement has caused Plaintiff irreparable harm, entitling Plaintiff to damages under 35 U.S.C. § 284 and injunctive relief under 35 U.S.C. § 283.

50. Defendant manufactures, sells, offers for sale, owns, directs, and/or controls

the operation of the Accused Products and generates substantial financial revenues and benefits therefrom.

51. Defendant, through its willful blindness, which constitutes the necessary knowledge, induced infringement under Title 35 U.S.C. § 271(b). Defendant performed actions that induced infringing acts that Defendant knew or should have known would induce actual infringements. *See Manville Sales Corp. v. Paramount Sys., Inc.*, 917 F.2d 544, 553 (Fed. Cir. 1990), quoted in *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006) (*en banc* in relevant part). "[A] finding of inducement requires a threshold finding of direct infringement— either a finding of specific instances of direct infringement or a finding that the accused products necessarily infringe." *Ricoh,* 550 F.3d at 1341 (citing *ACCO Brands, Inc. v. ABA Locks Manufacturer Co.*, 501 F.3d 1307, 1313 (Fed. Cir. 2007).

52. Plaintiff will rely on direct and/or circumstantial evidence to prove the intent element. *See Fuji Photo Film Co. v. Jazz Photo Corp.*, 394 F.3d 1368, 1377 (Fed. Cir. 2005) ("A patentee may prove intent through circumstantial evidence."); *Water Techs. Corp. v. Calco, Ltd.*, 850 F.2d 660, 668 (Fed. Cir. 1988) ("While proof of intent is necessary, direct evidence is not required; rather, circumstantial evidence may suffice.").

53. Defendant has taken active steps to induce infringement, such as advertising an infringing use, which supports a finding of an intention for the accused product to be used in an infringing manner. *See Metro-Goldwyn-Mayer Studios Inc. v.*

**ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT**

*Grokster, Ltd.*, 545 U.S. 913, 932 (2005) (explaining that the contributory infringement doctrine "was devised to identify instances in which it may be presumed from distribution of an article in commerce that the distributor intended the article to be used to infringe another's patent, and so may justly be held liable for that infringement").

54. Defendants have had actual notice of the '766 Patent since at least August, 2025, via a licensing letter sent by Cellspin to DJI, identifying all three asserted Patents and DJI's infringing products**.** Defendants' continued infringement post-notice is willful, entitling Plaintiff to enhanced damages under 35 U.S.C. § 284.

55. Each of DJI's aforesaid activities have been without authority and/or license from Plaintiff.

56. On account of the foregoing, Plaintiff contends such activities by DJI qualify this as an egregious case of misconduct beyond typical infringement, entitling Plaintiff to enhanced damages. Including based on the foregoing, Plaintiff hereby respectfully requests an award of enhanced damages, including treble damages, pursuant to 35 U.S.C. §§ 284, 285 and 1927.

### COUNT II – INFRINGEMENT OF U.S. PATENT NO. 10,425,806

57. Plaintiff refers to and incorporates herein the allegations in the above paragraphs.

58. United States Patent No. 10,425,806 (the "'806 Patent") was duly and legally issued by the USPTO after a full and examination presumed to be thorough.

**ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT**

59. DJI has directly infringed, and continues to directly infringe, the '806 Patent pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, by making, using, selling, offering to sell, and/or importing the Accused Instrumentalities, which practice the methods claimed in the '806 Patent, including all claims, within the United States and this District. See **Exhibit E** and **Exhibit H** for details. All Accused Instrumentalities share this functionality.

60. DJI has indirectly infringed, and continues to indirectly infringe, the '806 Patent pursuant to 35 U.S.C. § 271(b) by actively inducing direct infringement by others, including customers, in this District and elsewhere, through product sales, apps, and instructions. Defendants induce infringement under 35 U.S.C. § 271(b) by providing instructions and promotional materials in the DJI Fly and DJI Mimo apps, available through store.dji.com and app stores accessible in EDTX, which encourage users to automatically upload multimedia to SkyPixel, as evidenced by promotional content on www.dji.com and app store descriptions, thereby infringing Cellspin's patents.

61. DJI contributes to infringement of the '806 Patent pursuant to 35 U.S.C. § 271(c) by selling and offering to sell the Accused Instrumentalities and apps, knowing they are adapted for infringing use and lack substantial non-infringing use

62. DJI's direct and indirect infringement has caused Plaintiff irreparable harm, entitling Plaintiff to damages and injunctive relief.

63. Defendant manufactures, sells, offers for sale, owns, directs, and/or controls

**ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT**

the operation of the Accused Products and generates substantial financial revenues and benefits therefrom.

64. To the extent DJI continues its infringing activities post-notice, such infringement is willful, wanton, malicious, bad-faith, deliberate, and/or consciously wrongful, qualifying this as an egregious case of misconduct entitling Plaintiff to enhanced damages, including treble damages, pursuant to 35 U.S.C. § 285 and 28 U.S.C. § 1927.

65. Defendant, through its willful blindness, which constitutes the necessary knowledge, induced infringement under Title 35 U.S.C. § 271(b). Defendant performed actions that induced infringing acts that Defendant knew or should have known would induce actual infringements. *See Manville Sales Corp. v. Paramount Sys., Inc.*, 917 F.2d 544, 553 (Fed. Cir. 1990), quoted in *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006) (*en banc* in relevant part). "[A] finding of inducement requires a threshold finding of direct infringement— either a finding of specific instances of direct infringement or a finding that the accused products necessarily infringe." *Ricoh,* 550 F.3d at 1341 (citing *ACCO Brands, Inc. v. ABA Locks Manufacturer Co.*, 501 F.3d 1307, 1313 (Fed. Cir. 2007).

66. Plaintiff will rely on direct and/or circumstantial evidence to prove the intent element. *See Fuji Photo Film Co. v. Jazz Photo Corp.*, 394 F.3d 1368, 1377 (Fed. Cir. 2005) ("A patentee may prove intent through circumstantial evidence."); *Water Techs. Corp. v. Calco, Ltd.*, 850 F.2d 660, 668 (Fed. Cir. 1988) ("While

**ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT**

proof of intent is necessary, direct evidence is not required; rather, circumstantial evidence may suffice.").

67. Defendant has taken active steps to induce infringement, such as advertising an infringing use, which supports a finding of an intention for the accused product to be used in an infringing manner. *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd*., 545 U.S. 913, 932 (2005) (explaining that the contributory infringement doctrine "was devised to identify instances in which it may be presumed from distribution of an article in commerce that the distributor intended the article to be used to infringe another's patent, and so may justly be held liable for that infringement").

68. Defendants have had actual notice of the '806 Patent since at least August, 2025, via a licensing letter sent by Cellspin to DJI, identifying the all three asserted Patents and DJI's infringing products**.** Defendants' continued infringement post-notice is willful, entitling Plaintiff to enhanced damages under 35 U.S.C. § 284.

69. Each of DJI's aforesaid activities has been without authority and/or license from Plaintiff.

70. On account of the foregoing, Plaintiff contends such activities by DJI qualify this as an egregious case of misconduct beyond typical infringement, entitling Plaintiff to enhanced damages. Including based on the foregoing, Plaintiff hereby respectfully requests an award of enhanced damages, including treble damages, pursuant to 35 U.S.C. §§ 284, 285 and 1927.

**ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT**

## COUNT III – INFRINGEMENT OF U.S. PATENT NO. 11,234,121

71. Plaintiff refers to and incorporates herein the allegations in the above paragraphs.

72. United States Patent No. 11,234,121 (the "'121 Patent") was duly and legally issued by the USPTO after a full and examination presumed to be thorough.

73. DJI directly infringed, and continues to infringe directly, the '121 Patent pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, by making, using, selling, offering to sell, and/or importing the Accused Instrumentalities, which embody the systems claimed in the '121 Patent, including all claims, within the United States and this District. See **Exhibit F** and **Exhibit I** for details.

74. DJI has indirectly infringed, and continues to indirectly infringe, the '121 Patent pursuant to 35 U.S.C. § 271(b) by actively inducing direct infringement by others, including customers, in this District and elsewhere. Defendants induce infringement under 35 U.S.C. § 271(b) by providing instructions and promotional materials in the DJI Fly and DJI Mimo apps, available through store.dji.com and app stores accessible in EDTX, which encourage users to automatically upload multimedia to SkyPixel, as evidenced by promotional content on www.dji.com and app store descriptions, thereby infringing Cellspin's patents.

75. DJI contributes to infringement of the '121 Patent pursuant to 35 U.S.C. § 271(c) by selling and offering to sell the Accused Instrumentalities and apps,

**ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT**

knowing they are adapted for infringing use and lack substantial non-infringing use.

76. DJI's direct and indirect infringement has caused Plaintiff irreparable harm, entitling Plaintiff to damages and injunctive relief.

77. Defendant manufactures, sells, offers for sale, owns, directs, and/or controls the operation of the Accused Products and generates substantial financial revenues and benefits therefrom.

78. To the extent DJI continues its infringing activities post-notice, such infringement is willful, wanton, malicious, bad faith, deliberate, and/or consciously wrongful, qualifying this as an egregious case of misconduct entitling Plaintiff to enhanced damages, including treble damages, pursuant to 35 U.S.C. § 285 and 28 U.S.C. § 1927.

79. Defendant, through its willful blindness, which constitutes the necessary knowledge, induced infringement under Title 35 U.S.C. § 271(b). Defendant performed actions that induced infringing acts that Defendant knew or should have known would induce actual infringements. *See Manville Sales Corp. v. Paramount Sys., Inc*., 917 F.2d 544, 553 (Fed. Cir. 1990), quoted in *DSU Med. Corp. v. JMS Co*., 471 F.3d 1293, 1306 (Fed. Cir. 2006) (*en banc* in relevant part). "[A] finding of inducement requires a threshold finding of direct infringement— either a finding of specific instances of direct infringement or a finding that the accused products necessarily infringe." *Ricoh,* 550 F.3d at 1341 (citing *ACCO Brands, Inc. v. ABA Locks Manufacturer Co*., 501 F.3d 1307, 1313 (Fed. Cir. 2007).

**ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT**

80. Plaintiff will rely on direct and/or circumstantial evidence to prove the intent element. *See Fuji Photo Film Co. v. Jazz Photo Corp.*, 394 F.3d 1368, 1377 (Fed. Cir. 2005) ("A patentee may prove intent through circumstantial evidence."); *Water Techs. Corp. v. Calco, Ltd.*, 850 F.2d 660, 668 (Fed. Cir. 1988) ("While proof of intent is necessary, direct evidence is not required; rather, circumstantial evidence may suffice.").

81. Defendant has taken active steps to induce infringement, such as advertising an infringing use, which supports a finding of an intention for the accused product to be used in an infringing manner. *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 932 (2005) (explaining that the contributory infringement doctrine "was devised to identify instances in which it may be presumed from distribution of an article in commerce that the distributor intended the article to be used to infringe another's patent, and so may justly be held liable for that infringement").

82. Defendants have had actual notice of the '121 Patent since at least August 2025, via a licensing letter sent by Cellspin to DJI, identifying all three asserted Patents and DJI's infringing products**.** Defendants' continued infringement post-notice is willful, entitling Plaintiff to enhanced damages under 35 U.S.C. § 284.

83. Each of DJI's aforesaid activities has been without authority and/or license from Plaintiff.

84. On account of the foregoing, Plaintiff contends such activities by DJI qualify

this as an egregious case of misconduct beyond typical infringement, entitling Plaintiff to enhanced damages. Including based on the foregoing, Plaintiff hereby respectfully requests an award of enhanced damages, including treble damages, pursuant to 35 U.S.C. §§ 284, 285 and 1927.

## **PRAYER FOR RELIEF**

85. Plaintiff respectfully requests the Court enter judgment in its favor and against Defendants as follows:

i.    Finding that Defendants have directly and/or indirectly infringed all claims of the Patents-in-Suit;

ii.   Awarding Plaintiff damages under 35 U.S.C. § 284, including treble damages for willful infringement, and damages for post-verdict infringement;

iii.  Awarding Plaintiff pre-judgment and post-judgment interest and costs;

iv.   Declaring this case exceptional and awarding Plaintiff reasonable attorney fees under 35 U.S.C. § 285 or § 1927;

v.    Issuing a permanent injunction under 35 U.S.C. § 283 enjoining Defendants and their affiliates from infringing the Patents-in-Suit;

## **JURY DEMAND**

86. Plaintiff hereby requests a trial by jury including pursuant to Rule 38 of the Federal Rules of Civil Procedure on all issues so triable.

**ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT**

Dated:  September 15, 2025      Respectfully Submitted

*/s/ Randall Garteiser*

Randall Garteiser
  Texas Bar No. 24038912
  rgarteiser@ghiplaw.com
Christopher A. Honea
  Texas Bar No. 24059967
  chonea@ghiplaw.com
M. Scott Fuller
  Texas Bar No. 24036607
  sfuller@ghiplaw.com

**GARTEISER HONEA, PLLC**
119 W. Ferguson Street
Tyler, Texas 75702
Telephone: (903) 705-7420
Facsimile: (903) 284-5200

**ATTORNEYS FOR PLAINTIFF**

**ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT**