# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

|  |  |
|---|---|
| **CELLSPIN SOFT, INC.,** | |
| Plaintiff | **Case No. 2:25-cv-00949-JRG-RSP** |
| v. | |
| **SZ DJI TECHNOLOGY CO., LTD.** **and DJI EUROPE B.V.,** | **JURY TRIAL DEMANDED** |
| Defendants | |

### PLAINTIFF CELLSPIN SOFT, INC.'S MOTION TO COMPEL DJI'S OUTSTANDING TECHNICAL DISCOVERY AND COMPLIANCE WITH THE COURT'S DISCOVERY ORDER

Plaintiff Cellspin Soft, Inc. ("Cellspin") moves to compel Defendants SZ DJI Technology Co., Ltd. and DJI Europe B.V. (collectively, "DJI") to produce the outstanding internal technical discovery identified in Cellspin's May 20, 2026 deficiency statement. This motion is limited to technical discovery and does not presently seek an order compelling source-code inspection.

## I. INTRODUCTION

Nearly three months after Cellspin identified 101 numbered categories of missing technical discovery, DJI still has not identified which categories it considers satisfied, what documents satisfy them, which remain outstanding or withheld, or when production will be completed. The August 7 meet and confer confirmed the impasse: DJI offered only continued rolling productions and suggested another discussion after two weeks, *without category-specific answers* or a date-certain schedule.

DJI nevertheless characterizes its production as "substantial," points Cellspin to source code as the "most direct evidence," and invokes the January 11, 2027 substantial-completion deadline. Ex. B. But Cellspin's experts need the engineering roadmap: requirements, architecture, interfaces, hardware, data flows, testing, and backend/cloud documentation to conduct an efficient source-code review.

The disparity is substantial. Cellspin's May 20 statement covers numerous generations of Action cameras, Pocket cameras, Mini/Air/Mavic drones, two separate mobile applications (DJI Mimo and DJI Fly), camera/drone device firmware, hardware architecture, wireless protocols, and backend/cloud systems including SkyPixel. Yet DJI's supplemental technical productions comprise only 134 documents totaling **586 pages**. Ex. A ¶¶ 4–5. Those productions do not identify comprehensive PRDs/SRDs, system and hardware architecture, complete DJI Mimo and DJI Fly architecture, backend/cloud architecture, testing and validation, issue tracking, or responsible custodians and repositories. Nor has DJI mapped the production to Cellspin's 101 categories.

The prejudice is compounded because DJI's internal technical materials produced thus far are overwhelmingly Chinese. Ex. A ¶ 7. They must be translated, analyzed, and mapped to accused products and DJI's internal codenames before they can efficiently guide source-code inspection and follow-up discovery. The Court should require DJI to account for and timely complete its technical production now.

## II. BACKGROUND

The Discovery Order requires each party, "[w]ithout awaiting a discovery request," to produce or permit inspection of all relevant documents and ESI within its possession, custody, or control. Dkt. 22 ¶ 3(b). It requires immediate supplementation of incomplete disclosures, id. ¶ 8, and, following a deficiency statement and conference, requires the responding party to identify within 14 days "the requested items that will be disclosed" and "the reasons why any requested items will not be disclosed." Id. ¶ 9(a).

DJI's initial production through DJI_00003251 consisted principally of public or customer-facing manuals, FAQs, webpages, specifications, and similar materials. Ex. A ¶ 3. Cellspin therefore served its May 20 statement identifying 101 technical categories, including hardware and firmware architecture, wireless communications, end-to-end data flow, PRDs/SRDs, mobile-app architecture and interfaces, backend/cloud systems, testing, issue tracking, and custodians/repositories. Ex. C.

DJI later asserted generalized objections and made DJI-004 and DJI-005, totaling 586 pages. Their load files identify **no** individual custodian, and documents use internal designations including **WA140, HG211, WM162, and P2** without a complete mapping to commercial products, accused models, hardware configurations, or software/firmware versions. Ex. A ¶ 6.

On August 3, Cellspin sent a **final** meet-and-confer request requiring DJI to identify which May 20 categories were complete or partial, corresponding Bates ranges, remaining production and dates certain, materials withheld and reasons, custodians/repositories, and product/codename mappings. Ex. A ¶ 8. DJI did not provide that information. On August 5, DJI instead characterized its production as "substantial," emphasized source code, and stated that rolling production would continue consistent with the January 11 substantial-completion deadline. Ex. B; Ex. A ¶ 9.

At the August 7 conference, DJI still provided **no** category-specific accounting or date-certain completion schedule. It stated that additional documents would be produced on a rolling basis and proposed another discussion in approximately two weeks. Ex. A ¶¶ 10–13. Cellspin declined another indefinite extension of deficiencies outstanding since May 20. The parties reached an impasse. Id. ¶ 14.

## III. ARGUMENT

### A. DJI's limited, unmapped production does not resolve the identified deficiencies.

DJI has identified only 586 pages of supplemental technical material across two separate mobile applications, numerous device generations, firmware, hardware, wireless systems, and backend/cloud functionality. The limited character of the production is further reflected in its composition: 62 of the 134 documents are *only one or two* pages long, and 106 approximately 79% are five pages or fewer. Ex. A ¶ 4. The materials address some discrete functionality, but DJI has not identified complete productions of the core engineering categories requested and admits additional production remains forthcoming. The point is not that DJI must produce some predetermined number of pages; it is that the documents produced do not account for the broad categories of internal engineering records that

DJI necessarily maintains to design, implement, test, and support the accused products and systems, while DJI simultaneously admits additional responsive production remains forthcoming. Nor can DJI inflate the apparent size of its technical production by relying on its earlier approximately 3,251-page production, which consisted principally of public or customer-facing manuals, FAQs, webpages, specifications, and similar materials rather than the missing internal engineering record. Ex. A ¶ 3.

More fundamentally, DJI has not accounted for its production under Paragraph 9(a). Cellspin accepts reasonable grouping of related categories, but DJI must identify what has been disclosed and why requested materials will not be disclosed. *Nearly three months after service of Cellspin's May 20* detailed *technical deficiency statement*, DJI still has **not** answered the 101 numbered technical categories with the basic accounting Paragraph 9(a) contemplates: what has been disclosed, what remains outstanding, and what will not be disclosed and why. Ex. A ¶¶ 8–13; see Ex. C**.** Unexplained rolling productions leave Cellspin unable to determine what is complete, partial, outstanding, or withheld. Paragraph 9(a) imposed a 14-day response period, not an indefinite rolling process. At the August 7 conference, DJI still has not provided the required accounting of what it will disclose and what it will not disclose.

The omission also prevents *follow-up* discovery. Cellspin expressly requested custodian and repository identification for the accused product and application environments. For example, Request No. 100 specifically seeks the source-control repositories, build systems, testing infrastructure, and custodians for DJI Mimo and DJI Fly. Ex. C at 2 (Req. No. 100). **Yet DJI identifies no individual custodian**. Ex. A ¶ 6. Nor has DJI mapped internal codenames such as *WA140, HG211, WM162, and P2* to accused commercial products and configurations. Without that information, Cellspin cannot reliably identify the products involved, responsible engineers, or appropriate communications and repositories to search.

**B. Source code does not substitute for separate engineering documentation.**

Cellspin intends to inspect source code, but code does not replace the engineering documents explaining how the accused systems were designed and implemented. Cellspin specifically requested end-to-end architecture and data-flow diagrams, PRDs/SRDs, DJI Mimo integration materials, and backend/cloud architecture. Ex. C at 1 (Reqs. 15–23). Those materials identify requirements, components, interfaces, communications, and system operation in ways that source code alone does not.

Those materials provide the roadmap for efficient review of source code spanning multiple products, two mobile applications, firmware environments, hardware platforms, and backend systems. DJI should not require Cellspin's experts to search large repositories before producing the documents identifying where the accused functionality resides and how the systems interact.

**C. January 11 is not permission to delay available technical discovery.**

DJI invokes the January 11 substantial-completion deadline, but the Docket Control Order expressly requires parties to produce documents **"as soon as they are available and not wait until the substantial completion deadline."** Dkt. 23 at 4. Paragraph 8 likewise requires immediate supplementation, and Paragraph 10 provides that incomplete investigation does not excuse compliance. Dkt. 22 ¶¶ 8, 10.

Delay is particularly *prejudicial because DJI's internal production is overwhelmingly Chinese*. Cellspin **must** translate and analyze relevant materials, map them to products and versions, identify pertinent custodians and code modules, inspect source code, and conduct follow-up discovery. Cellspin does not ask DJI to create translations, but DJI should produce any existing English-language versions or translations concurrently with the originals.

**IV. RELIEF REQUESTED**

Cellspin respectfully requests an Order requiring DJI to:

1. **Within seven days**, serve a Paragraph 9(a) chart or equivalent response identifying for each May 20 technical category, individually or in clearly related groups, its status, responsive Bates ranges, additional production and date certain, withheld material, and basis for nondisclosure;

2. **Within seven days**, identify or produce documents sufficient to identify relevant custodians, engineering teams, repositories and technical systems, and map internal designations including WA140, HG211, WM162, and P2 to corresponding commercial products, accused models, hardware configurations, and software/firmware versions;

3. **Within twenty-one days**, substantially complete production of the outstanding technical materials identified May 20, including PRDs/SRDs, functional/design specifications, DJI Mimo and DJI Fly architecture, firmware and hardware architecture, wireless/protocol/interface documents, end-to-end data-flow materials, backend/cloud/SkyPixel architecture and APIs, testing/validation, and issue-tracking materials;

4. Produce concurrently any existing English-language versions or translations and provide a date-certain schedule for technical material that cannot reasonably be produced within twenty-one days; and

5. Award Cellspin its reasonable expenses and attorneys' fees under Fed. R. Civ. P. 37(a)(5), and such other relief as appropriate.

**CONCLUSION**

DJI has had notice of these deficiencies since May 20 but still has not accounted for its limited technical production, identified what remains outstanding or withheld, provided critical custodian and product-mapping information, or committed to a date-certain completion schedule. The motion should be granted.

Dated: August 7, 2026

Respectfully Submitted.

*/s/ Randall Garteiser*

M. Scott Fuller
  Texas Bar No. 24036607
  sfuller@ghiplaw.com
Randall Garteiser
  Texas Bar No. 24038912
  rgarteiser@ghiplaw.com
Christopher A. Honea
  Texas Bar No. 24059967
  chonea@ghiplaw.com

**GARTEISER HONEA, PLLC**
119 W. Ferguson Street
Tyler, Texas 75702
Telephone: (903) 705-7420
Facsimile: (903) 405-3999

**ATTORNEYS FOR PLAINTIFF
CELLSPIN SOFT, INC.**

**CERTIFICATE OF SERVICE**

I hereby certify that on August 7, 2026, the foregoing document was filed electronically through the Court's CM/ECF system and served on all counsel of record who are deemed to have consented to electronic service.

*/s/ Randall Garteiser*
Randall Garteiser

**CERTIFICATE OF CONFERENCE**

Pursuant to Local Rule CV-7(h)–(i) and Paragraph 9(c) of the Discovery Order, counsel conducted a substantive telephone conference on August 7, 2026 concerning the technical discovery deficiencies presented in this Motion.

Cellspin requested resolution of the deficiencies identified in its May 20, 2026 technical deficiency statement and reiterated in its August 3, 2026 Final Request, including identification of the technical categories DJI considers satisfied or partially satisfied, corresponding Bates ranges, outstanding production, dates certain for completion, categories or materials DJI will not disclose and the reasons therefor, and whether responsive materials are being withheld pursuant to DJI's objections. DJI did not provide that information. DJI stated that it intends to continue producing additional technical documents on a rolling basis and proposed that the parties discuss the production again in approximately two weeks. Cellspin explained that it would not agree to further postpone resolution of deficiencies outstanding since May 20 without concrete identification of what has been produced, what remains outstanding, what will not be produced, and when production will be completed.

The parties were unable to reach agreement. Discussions have conclusively ended in an impasse, leaving the issues presented in this Motion for the Court to resolve. This Motion is opposed.

*/s/ Randall Garteiser*
Randall Garteiser